Matter of Neeman v Town of Warwick (2020 NY Slip Op 03112)





Matter of Neeman v Town of Warwick


2020 NY Slip Op 03112


Decided on June 3, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 3, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
COLLEEN D. DUFFY
BETSY BARROS
PAUL WOOTEN, JJ.


2018-05755
 (Index No. 7409/17)

[*1]In the Matter of Giora Neeman, et al., appellants,
v
Town of Warwick, et al., respondents.


Zarin & Steinmetz, White Plains, NY (Michael D. Zarin and Jody T. Cross of counsel), for appellants.
Blustein, Shapiro, Rich & Barone, LLP, Goshen, NY (Jay R. Myrow of counsel), for respondents Town of Warwick, Town of Warwick Planning Board, and Town of Warwick Town Board.
The Kleister Law Group, Washingtonville, NY (Christopher B. Kleister of counsel), for respondents Black Bear Family Campground, Inc., Rita Zelda Smith, and Rita P. Smith Living Trust.



DECISION & ORDER
In a hybrid proceeding pursuant to CPLR article 78 to review determinations of the respondent/defendant Town of Warwick Planning Board dated August 16, 2017, and September 20, 2017, adopting a negative declaration under the State Environmental Quality Review Act and granting the application of the respondent/defendant Black Bear Family Campground, Inc., for site plan approval and a special use permit, and action, inter alia, for a judgment declaring that a development agreement entered into between the respondents/defendants Town of Warwick Town Board and Black Bear Family Campground, Inc., is null and void, the petitioners/plaintiffs appeal from a judgment of the Supreme Court, Orange County (Elaine Slobod, J.), dated May 1, 2018. The judgment denied the amended petition and, in effect, dismissed the proceeding/action.
ORDERED that the judgment is reversed, on the law, with one bill of costs, the amended petition is granted, the determinations dated August 16, 2017, and September 20, 2017, are annulled, and the matter is remitted to the Supreme Court, Orange County, for the entry of an appropriate amended judgment, inter alia, declaring that the development agreement entered into between the respondents/defendants Town of Warwick Town Board and Black Bear Family Campground, Inc., is null and void.
The petitioners/plaintiffs own a parcel of land located in the Rural Zoning District of the Town of Warwick. The property is adjacent to and shares an approximately 1,888-foot boundary with property on which the respondent/defendant Black Bear Family Campground, Inc. (hereinafter BBFC), operates a campground. In 1965, the Town of Warwick Planning Board (hereinafter the Planning Board) approved a site plan permitting the operation of 74 campsites on the BBFC property, and in 1980, the Planning Board approved the construction of certain improvements on the property. Over the years, without seeking any variances, permits, or approvals from the Town, BBFC expanded the campground from the approved 74 campsites to 154 campsites [*2]and constructed accessory structures and buildings. In 2008, the Town issued numerous violations against BBFC for its illegal operations and instituted civil proceedings against BBFC. Subsequently, because the zoning code required, inter alia, that campgrounds maintain a setback of 100 feet from any property line and opaque screening of the campground, BBFC submitted an application to the Planning Board for site plan approval and a special use permit for the expanded campground to permit locating campsites, which included recreational vehicle pads, and other structures and buildings within the 100-foot setback in violation of the zoning code. BBFC also sought from the Town of Warwick Zoning Board of Appeals (hereinafter the ZBA) an interpretation of the zoning code that zoning amendments enacted in 2015, setting an 120-day limit on the time that campers could stay at the campground, did not apply to the original 74 campsites that had been approved, since at that time there was no time limit.
In settlement of the civil proceedings instituted by the Town against BBFC, the Town of Warwick Town Board (hereinafter the Town Board) entered into a "Development Agreement" with BBFC whereby, inter alia, the Town Board agreed that it would amend the zoning code's time limit to stay at the campground from 120 days to 210 days and would not modify the bulk requirements so as to affect density restrictions for campgrounds in the zoning code prior to the approval of BBFC's application for site plan approval. Further, as per the development agreement, BBFC sought from the ZBA and ultimately obtained an area variance to alleviate its violation of the 100-foot setback requirement in the zoning code. In conjunction with BBFC's application for site plan approval and a special use permit, an Environmental Assessment Form (hereinafter EAF) was completed, which concluded that the construction and expansion of the campground would result in no significant adverse impacts on the environment. Based upon the findings in the EAF and public hearings held on the matter, the Planning Board adopted a negative declaration under the State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA) and granted BBFC's application for site plan approval and a special use permit.
The petitioners/plaintiffs commenced this hybrid proceeding pursuant to CPLR article 78 to annul the Planning Board's adoption of the negative declaration, approval of the site plan, and issuance of a special use permit, and action, inter alia, for a judgment declaring that the development agreement is null and void because it constituted illegal contract zoning. The Supreme Court denied the amended petition and, in effect, dismissed the proceeding/action. The petitioners/plaintiffs appeal.
The petitioners/plaintiffs argue that the Planning Board failed to comply with SEQRA in adopting the negative declaration. We agree.
In reviewing a negative declaration, a court may not substitute its own judgment for that of the lead agency by weighing the desirability of particular actions or by choosing among possible alternatives (see Akpan v Koch, 75 NY2d 561; Matter of Incorporated Vil. of Poquott v Cahill, 11 AD3d 536). Instead, judicial review is strictly limited to whether the lead agency identified the relevant areas of environmental concern, took a "hard look" at them, and made a "reasoned elaboration" of the basis of its determination (Matter of New York City Coalition to End Lead Poisoning v Vallone, 100 NY2d 337, 348 [internal quotation marks omitted]). SEQRA guarantees that agency decision-makers "will identify and focus attention on any environmental impact of proposed action, that they will balance those consequences against other relevant social and economic considerations, minimize adverse environmental effects to the maximum extent practicable, and then articulate the bases for their choices" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 414-415).
As the lead agency, the Planning Board was authorized to seek out the advice and assistance of other agencies, but the final determination remained with the lead agency principally responsible for approving the site plan (see Matter of Oyster Bay Assoc. Ltd. Partnership v Town Bd. of Oyster Bay, 58 AD3d 855). "The fact that other agencies may have had an independent obligation to analyze the potential impacts of the [campground] had no bearing on [the Planning Board's] own obligation to analyze the listed areas of environmental concern" (Matter of Golten Mar. Co. v New York State Dept. of Envtl. Conservation, 193 AD2d 742, 743). The Planning Board [*3]failed to adequately assess and consider the potential environmental impacts of the construction and expansion of the campground from 74 campsites to 154 campsites, and adopted the negative declaration based largely upon its finding that the campground had been operating 154 campsites—albeit illegally—for many years. Under the circumstances, the Planning Board's adoption of the negative declaration was arbitrary and capricious.
Moreover, the development agreement entered into between the Town Board and BBFC constituted illegal contract zoning. "[N]o municipal government has the power to make contracts that control or limit it in the exercise of its legislative powers and duties" (Collard v Incorporated Vil. of Flower Hill, 52 NY2d 594, 601). The test is whether the development agreement committed the Town to a specific course of action with respect to a zoning amendment (see Matter of Save Harrison, Inc. v Town/Village of Harrison, NY, 168 AD3d 949). The Town Board agreed to amend the zoning code to permit 210-day occupancy limit, a change from the current 120-day occupancy limit, in exchange for BBFC's agreement that the 210-day occupancy limit would apply to all of the campsites, including the original 74 approved campsites. This was an agreement binding on BBFC to give a form of consideration in exchange for legislative action and to limit the Town Board's authority to change the bulk requirements in the zoning code until such time as BBFC would not be negatively affected by such change (cf. Matter of DePaolo v Town of Ithaca, 258 AD2d 68; Matter of Tuxedo Land Trust, Inc. v Town of Tuxedo, 34 Misc 3d 1235[A], 2012 NY Slip Op 50377[U] [Sup Ct, Orange County], affd 112 AD3d 726).
In light of the foregoing, we need not address the parties' remaining contentions.
Accordingly, the Planning Board's determinations dated August 16, 2017, and September 20, 2017, should be annulled, and the matter is remitted to the Supreme Court, Orange County, for the entry of an appropriate amended judgment, inter alia, declaring that the development agreement entered into between the Town Board and BBFC is null and void.
SCHEINKMAN, P.J., DUFFY, BARROS and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court